## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AMY FAZENBAKER, *et al.*,

*Plaintiffs,*

v.

COMMUNITY HEALTH CARE, INC.,
d/b/a/ COMPLETECARE HEALTH
NETWORK,

*Defendant.*

Hon. Edward S. Kiel, U.S.D.J.

Hon. Sharon A. King, U.S.M.J.

Civil Action No. 1:24-cv-11170

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO REMAND THIS CIVIL ACTION</u>

**KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645

**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004

**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 w. Monroe Street, Suite 2100
Chicago, IL 60606

*[Additional Plaintiffs' Counsel Listed on Signature Page]*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT....................................................................................1

II.     FACTUAL BACKGROUND........................................................................................2

        A.      CCHN Promises to Protect Personally Identifiable Information............................3

        B.      CCHN Violates its Duties........................................................................................4

III.    PROCEDURAL POSTURE..........................................................................................5

IV.     ARGUMENT.................................................................................................................6

        A.      Standard of Review.................................................................................................6

        B.      Regulatory Framework............................................................................................6

        C.      CCHN Has No Basis to Remove Under § 233(l)(2)..............................................8

        D.      Data Breach Claims Are Not Afforded Protection Under § 233...........................10

        E.      CCHN Has No Basis to Remove Under § 1442....................................................13

                1.      CCHN's § 1442 Removal is Untimely.......................................................13

                2.      CCHN Is Not an Officer of the United States and Is Not Acting Under an Officer of the United States........................................................................14

        CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

*Blumberger v. Tilley,*
   115 F.4th 1113 (9th Cir. 2024)...................................................................................9

*Campbell v. S. Jersey Med. Ctr.,*
   732 F. App'x 133 (3d Cir. 2018)..............................................................................9

*Doe v. Centerville Clinics Inc.,*
   2023 WL 5984337 (W.D. Pa. Sept. 14, 2023) *aff'd*, 2024 WL 3666164
   (3d Cir. Aug. 6, 2023)............................................................................................14

*Doe v. Centerville Clinics Inc.,*
   2024 WL 3666164 (3d Cir. Aug. 6, 2024)................................................................8

*El Rio Santa Cruz Neighborhood Health Ctr.,*
   396 F.3d 1265 (D.C. Cir. 2005)................................................................................9

*Fidelitad, Inc. v. Insitu, Inc.,*
   904 F.3d 1095 (9th Cir. 2018)................................................................................15

*Ford v. Sandhills Med. Found., Inc.,*
   97 F.4th 252 (4th Cir. 2024)..............................................................................11, 13

*Frederico v. Home Depot,*
   507 F.3d 188 (3d Cir. 2007)......................................................................................6

*Hale v. Arcare, Inc.,*
   2024 WL 1016361 (E.D. Ark. Mar. 8, 2024)..........................................................11

*Hui v. Castaneda,*
   559 U.S.799 (2010)............................................................................................10, 11

*K.C. v. Cal. Hosp. Med. Ctr.,*
   2018 WL 5906057 (C.D. Cal. Nov. 8, 2018)..........................................................14

*Krandle v. Refuah Health Ctr., Inc.,*
   2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024).........................................................13

*L.D.Q. v. Cal. Hosp. Med. Ctr.,*
   2018 WL 6040474 (C.D. Cal. Nov. 16, 2018).........................................................15

*Maglioli v. All. HC Holdings LLC,*
   16 F.4th 393 (3d Cir. 2021)....................................................................................14

*Marshall v. Lamoille Health Partners, Inc.*,
   2023 WL 2931923 (D. Vt. Apr. 13, 2023)..................................................................12

*McKenzie v. Robeson Health Care Corp.*,
   2024 WL 3039656 (E.D.N.C. June 17, 2024)............................................................12

*Mendez v. Bolton*,
   739 F.2d 15 (1st Cir. 1984).......................................................................................11

*N.G. v. Downey Reg'l Med. Ctr.*,
   140 F. Supp. 3d 1036 (C.D. Cal. 2015).....................................................................15

*Nye v. Hilo Med. Ctr.*,
   2010 WL 931926 (D. Haw. Mar. 11, 2010)................................................................14

*United States v. Nordic Vill. Inc.*,
   503 U.S. 30 (1992)......................................................................................................6

*V.G. by & through Osorio v. Cha Hollywood Med. Ctr.*,
   2024 WL 289320 (C.D. Cal. Jan. 23, 2023)..............................................................14

## STATUTES

28 C.F.R. § 15.4(b)...................................................................................................7
28 U.S.C. § 1442.....................................................................................................2
28 U.S.C. § 1442(a)................................................................................................2
28 U.S.C. § 1446(b)................................................................................................9
28 U.S.C. § 1446(b)(1)...........................................................................................13
42 U.S.C. § 233..............................................................................................*passim*
42 U.S.C. § 233(a)..............................................................................................7, 10
42 U.S.C. § 233(c)...............................................................................................5, 8
42 U.S.C. §§ 233(g)(1)(A)-(D), (h).....................................................................7, 13
42 U.S.C. § 233(l)(1)............................................................................................5, 8
42 U.S.C. § 233(l)(2)...............................................................................................6
42 U.S.C. § 251(b)................................................................................................12
42 U.S.C. § 254(b)(1)(a).........................................................................................7
42 U.S.C. § 2339(l)(1).............................................................................................7
U.S.C. § 233(g)(1)(A).........................................................................................8, 10

Plaintiffs Amy Fazenbaker, D.F., a minor by his legal guardian Amy Fazenbaker, Al-Tamia Webb, Mary Ann Dos Santos, Melissa Lyston, J.S., a minor by her guardian ad litem Tara Bixler, Marlon Pollard, Chad Santiago, Lacy Matczak, and Troy Durkee, respectfully move this Court to remand this civil action to the Superior Court of the State of New Jersey.

## I.    PRELIMINARY STATEMENT

Beginning on January 12, 2024, Plaintiffs in this matter filed four substantially similar class action lawsuits in the New Jersey Superior Court arising from a cyberattack experienced by Defendant CompleteCare Health Network ("CCHN" or "Defendant").

In April 2024 – eight months prior to CCHN's purported removal – the United States Attorney for the District of New Jersey appeared in each of these four lawsuits and notified all parties that – notwithstanding that CCHN, like certain other nonprofit health centers, receives some federal funding – the federal liability protections **do not** extend to data breach cases, CCHN **is not** deemed to be an employee of the Public Health Service (as defined below), and that the United States **will not** intervene in this case or remove it to federal court under 28 U.S.C. § 233(c).

Thereafter, as detailed below, these four actions were consolidated by the New Jersey Superior Court and the parties proceeded to litigate the matter.  Following that consolidation decision, and as detailed below, intense litigation activity ensued:  Plaintiffs filed a consolidated amended class action complaint, CCHN moved to dismiss that complaint, the parties attempted to mediate, and Plaintiffs filed an opposition to the motion to dismiss.

Incredibly, after all of that activity – and more than 11 months after the first of these consolidated class actions lawsuits had been filed – CCHN purported to remove this consolidated class action to this Court.  CCHN's excuse for its egregiously late filing is remarkable.  CCHN

claims that it only learnt a "few weeks" before its December 16, 2024 removal of the existence of some decisional law that supposedly supports its removal. Even putting aside the fact that ample decisional law rejects CCHN's view and richly supports the United States' view that removal here is improper, CCHN's failure to timely discover the minority-view is no excuse for its tardiness. In any event, CCHN's two purported bases for removal also fail on the merits:

*First*, 42 U.S.C. § 233 offers no protection to CCHN for data breach claims given that such claims do not pertain to the provision of medical care services. Put simply, data breach claims are not medical malpractice claims. Accordingly, § 233 does not permit removal.

*Second*, contrary to CCHN's assertions, the fact that (as a private nonprofit entity) CCHN receives some federal funding does not render CCHN an "officer of the United States" or a "person acting under" an officer of the United States such that CCHN would be eligible to remove this case under the "federal officer" removal statute, 28 U.S.C. § 1442(a).

For these reasons, and for the reasons detailed below, Plaintiffs respectfully submit that the Court should reject CCHN's improper removal and remand this consolidated class action to the New Jersey Superior Court where the parties were already litigating for nearly a year prior to CCHN's improper removal.

## II.    FACTUAL BACKGROUND

Defendant CCHN is a sophisticated medical practice operating in New Jersey. ¶ 2.[1] CCHN provides primary care, dental care, and other medical care to patients through fourteen different entities, including Cape May Medical, Bridgeton Women's Medical, Millville Medical & Dental, Vineland Health Campus, and Wildwood Medical & Dental. *Id*. CCHN has a

---

[1] References to "¶ __" refer to the Consolidated Amended Complaint filed by Plaintiffs on May 28, 2024 in the New Jersey Superior Court (defined infra as the "CAC").

substantial number of patients, including over 118,000 patient visits in 2020 by more than 51,000 individuals. *Id*.

To perform its business operations, CCHN collects a significant amount of highly sensitive PII and PHI (collectively, the "Private Information") from Plaintiffs and other individuals. *Id.* ¶¶ 3, 4, 8, 11, 12, 13, 20, 70.  For many current and former CCHN patients, including each Plaintiff, a large subset of their Private Information was compromised during a cyberattack discovered by CCHN on or about October 12, 2023 (the "Data Breach"). *Id.* ¶¶ 3, 4, 5. Because CCHN failed to implement adequate cybersecurity protocols, Plaintiffs suffered harm including fraud, actual and/or imminent identity theft, loss of time, loss of privacy, out-of-pocket costs and the diminished value of their PII. *Id.* ¶¶ 9, 18, 19, 71, 120, 157, 193-96, 201, 221, 222, 226.

Despite the broad scope of this data breach, CCHN failed to begin notifying victims of the Data Breach until December 15, 2023, approximately two months after the incident occurred. *Id.* ¶¶ 7, 24-31, 63, 173. At that point, it was too late. Plaintiffs now face a lifetime of risk of identity theft in addition to the present and continuing injuries they have already experienced. *Id.* ¶ 18.

**A.** ***CCHN Promises to Protect Personally Identifiable Information.*** The Private Information collected by CCHN includes (but is not limited to) names, phone numbers, Social Security numbers and sensitive medical-related information. *Id.* ¶ 8. CCHN promises to safeguard this Private Information from theft or misuse by way of its privacy policy (the "Privacy Policy"). *Id.* ¶¶ 50-52. Additionally, CCHN impliedly promises to protect this Private Information when it initially collects it. *Id.* ¶¶ 212, 276. CCHN failed to implement the safeguards necessary to fulfill those promises.

**B.    *CCHN Violates its Duties*.** Beginning in October 2023, CCHN allowed unobstructed access to its network (and the resulting PII) to the cybercriminals that perpetrated the Data Breach. *Id*. ¶¶ 14, 65, 68. CCHN discovered the Data Breach on or about October 12, 2023, a ransomware attack, in which an unauthorized third party accessed some of CCHN's computer systems. *Id*. ¶ 63.  In its notice of data breach ("Notice"), CCHN implicitly admitted its data security practices were ineffective, stating that, in response to the breach, "[w]e have taken steps to further secure our network and mitigate the risk of a similar incident occurring in the future, including revising our policies and procedures and network security software, and revising how we store and manage data." *Id*. at p. 14 n.15.

Despite the well-known risk of cyberattacks and the significant harm that victims suffer as a result of such attacks, CCHN did not employ necessary and reasonable security practices and protocols. *Id*. ¶¶ 101-12.  Compounding the harm, CCHN did not disclose to victims that the breach had occurred until two months after becoming aware of the Data Breach (and an even longer after it first began). *Id*. ¶ 7. This unreasonable delay caused additional harm because Plaintiffs and victims were unable to quickly and effectively take remedial and protective measures in light of the Data Breach. *Id*. ¶ 67. Despite widespread knowledge of the dangers of identity theft and fraud associated with data breaches, CCHN provided unreasonably deficient protections prior to the Data Breach which harmed Plaintiffs. *Id*. ¶ 69.

The Data Breach harmed Plaintiffs and the Class, exposing each to a present, continuing, and lifelong risk of identity theft and fraud. *Id*. ¶¶ 18, 130, 132, 170. This risk is neither theoretical nor speculative as their Private Information has undisputedly been accessed, stolen, and misused by cybercriminals. *Id*. ¶¶ 65, 68, 130. For example, shortly after the Data Breach, an unauthorized party attempted to open multiple bank accounts in Plaintiff A. Fazenbaker's name

and to sign into her bank account multiple times. *Id*. ¶ 140.Consequently, A. Fazenbaker had to change debit cards two times to prevent further misuse of her data. *Id*. Further, shortly after the Data Breach, Plaintiff A. Fazenbaker was notified by Credit Karma that her Private Information had been published to the dark web. *Id*. ¶ 142.

Similarly, shortly after the Data Breach, Plaintiff Webb had a fraudulent hard credit inquiry regarding an auto loan which forced her to spend time disputing the inquiry, contacting her bank's fraud department to alert them to this unauthorized inquiry. *Id*. ¶ 153. And, also shortly after the Data Breach, Plaintiff Webb received an iPhone alert that her Private information had been published to the dark web. *Id*. ¶ 154. As detailed in the Complaint, in the wake of the Data Breach, other Plaintiffs similarly suffered alarming incidents of identity fraud and attempted identity theft. *Id*. ¶¶ 179, 180, 192, 207-10, 220, 222.

### III.    PROCEDURAL POSTURE

On January 12, 2024, Plaintiffs Amy Fazenbaker and D.F., a minor, on behalf of themselves and all others similarly situated, filed the first of four class action lawsuits in New Jersey Superior Court, Law Division, for Cumberland County (the "New Jersey Superior Court"). In the days and weeks thereafter, three additional class action lawsuits were filed in the New Jersey Superior Court.

On April 9, 2024, the Plaintiffs moved to consolidate these actions.

On April 10, 2024, the United States Attorney for the District of New Jersey appeared in each of the state court actions, advising CCHN Plaintiffs of the following written notice:

> PLEASE TAKE NOTICE that, pursuant to 42 U.S.C. § 233(l)(1), the United States Attorney for the District of New Jersey has determined that defendant Community Health Care, Inc., d/b/a CompleteCare Health Network, is not deemed to be an employee of the Public Health Service with respect to the alleged acts or omissions giving rise to this case. Accordingly, the United States will not intervene in this case or remove it to federal court under 42 U.S.C. § 233(c).

USAO Notice.

On April 28, 2024, the New Jersey Superior Court granted the request for consolidation and consolidated these four class action lawsuits.

On May 28, 2024, Plaintiffs filed a consolidated amended complaint ("CAC").  On July 31, 2024, the parties filed a consent motion to stay the consolidated action pending the parties' attempt to mediate, which the New Jersey Superior Court granted on August 9, 2024.  On November 1, 2024, Complete Care moved to dismiss the CAC.  On December 10, 2024, Plaintiffs filed their opposition to CCHN's motion to dismiss.

On December 16, 2024, before the New Jersey Superior Court could issue a ruling on CCHN's motion to dismiss – and eight months after the United States Attorney filed the § 233(l)(1) notice – CCHN filed a notice of removal pursuant to 42 U.S.C. § 233(l)(2) and 28 U.S.C. § 1442 with the Clerk for the United States District Court of New Jersey.

## IV.    ARGUMENT

*A.    Standard of Review*.  CCHN has the burden of proving that this action was properly removed from the New Jersey Superior Court.  "The party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

Where, as here, the removing party invokes the United States' sovereign immunity, the waiver of immunity must be "unequivocally expressed" and "the Government's consent to be sued" must be construed strictly in favor of the sovereign.  *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992).

*B.    Regulatory Framework*.  The United States provides grants to many public and nonprofit providers of medical services to alleviate "the costs of the operation of public and nonprofit health

centers that provide health services to medically underserved populations. 42 U.S.C. § 254(b)(1)(a). In 1992, Congress passed the Federally Supported Health Centers Assistance Act of 1992 as a means of easing the cost-burden health centers incurred in purchasing medical malpractice insurance. Pub. L. No. 102-501, 106 Stat. 3268 (1992) ("FSHCAA"). The FSHCAA was appended to an earlier 1970 statute immunizing employees of the United States Public Health Service ("PHS" or "Public Health Service") from medical malpractice.

Subject to various conditions and limitations, the FSHCAA made the Federal Tort Claims Act's ("FTCA") remedy against the United States exclusive for certain medical malpractice lawsuits. H.R. Rep. 102-823, at 4-6 (1992). Should a health center seek eligibility for medical malpractice protections under the FSHCAA, it must apply to the Secretary of Health and Human Services ("HHS") and obtain annual approval for such protections from the Secretary of HHS. 42 U.S.C. §§ 233(g)(1))(A)-(D), (h). If the health center obtains such approval, the Secretary of HHS "deems" the health center and its providers to be employees of the Public Health Service for the then upcoming year with respect to "services provided" to the health center's patients and certain non-patients for purposes of 42 U.S.C. § 233. *See id.* at § 233(g)(1)(A)-(B).

Where a civil lawsuit against a health center is filed in state court, the Secretary of HHS must determine whether the health center "is deemed to be employee of the Public Health Service for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 2339(l)(1). Once the Secretary of HHS makes this "deeming" determination, the Attorney General decides whether FTCA coverage applies to a specific lawsuit. *See* 42 U.S.C. § 233(b)-(c); 28 C.F.R. § 15.4(b). In cases where deeming applies, 42 U.S.C. § 233(a) provides that the exclusive remedy for medical malpractice suits against these "deemed" Public Health Service employees is an action against the United States under the FTCA. *See*

U.S.C. § 233(g)(1)(A).

The FSHCAA offers two methods to remove a case to federal court. First, the Attorney General may remove the case at any prior to trial. 42 U.S.C. § 233(c). Second, the defendant may remove the case if the Attorney General fails to appear in state court pursuant to 42 U.S.C. § 233(l)(1) within 15 days after being notified of the case. *Id*. at 233(1)(2). Neither of those events occurred here.

### C.    CCHN Has No Basis to Remove Under § 233(l)(2)

CCHN contends that the data breach claims against it fall under the protections of § 233, and that – despite the United Sates Attorney timely appearing and filing notices under § 233(l)(1) – CCHN is nonetheless entitled to remove the case under § 233(i)(2). CCHN is wrong on both counts.

Removal under the FSHCAA is authorized in only two circumstances. First, the government may remove a case to federal court at any time before trial if the Attorney General appears in the state court proceeding within fifteen days of being notified and makes an affirmative determination that the defendant is entitled to coverage under the FSHCAA. Second, a defendant may itself remove the case if the Attorney General fails to appear in the state court proceeding within fifteen days of being notified. *Doe v. Centerville Clinics Inc.*, 2024 WL 3666164, at *1 (3d Cir. Aug. 6, 2024); *see* 42 U.S.C. § 233(*l*)(1)-(2).

CCHN asserts that it notified HSS of the four separate actions on February 24, 2024, and provided additional information to HSS by letter on March 8, 2024. The Attorney General's designee, the United States Attorney for the District of New Jersey appeared in state court during the 15-day period, filed notice under § 233(l)(1), and sent a notice to CCHN denying coverage

under § 233.[2]   Each of these notices preclude CCHN's removal under § 233(*l*)(2) in light of the United States Attorney for the District of New Jersey's timely appearance.

CCHN relies on two medical malpractice cases for its proposition that removal is proper. These cases are inapposite.  *Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 133 (3d Cir. 2018) involved a medical malpractice lawsuit where the Attorney General did not appear in state court during the statutorily mandated time period.  However, as detailed at length herein, medical malpractice claims – unlike data breach claims – fall within the ambit of § 233.

Likewise, *Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024) – unlike this data breach lawsuit – involved malpractice claims.  There, the Ninth Circuit held, inconsistent with the law of the Third Circuit, that § 233(*l*)(1) imposed additional requirements on the Attorney General requiring notification that HSS previously deemed the physician covered for medical malpractice claims for that year, that it remove the matter to federal court, and conduct a scope of employment determination in federal court before seeking remand.  Putting aside the point that the Ninth Circuit's ruling in *Blumberger* is inconsistent with Third Circuit law on the precise procedure to apply in medical malpractice claims (namely, when the scope-of-employment determination should be made), nothing in *Blumberger* suggests that *data breach claims* are subject to § 233.  To be clear, they are not.

Separately, CCHN's removal is also barred by laches or 28 U.S.C. § 1446©.  *See El Rio Santa Cruz Neighborhood Health Ctr.*, 396 F.3d 1265, 1273 (D.C. Cir. 2005) (in the absence of a time limit for removal under § 233(1)(2,) application of either 28 U.S.C. § 1446(b) or laches

---

[2]  Prior general determination from HSS that a clinic is a § 254b grantee does not equate to a grant of § 233 coverage.  *Centerville Clinics Inc.*, 2024 WL 3666164, at *2 ("just because [defendant] has a prior determination from HHS does not mean that the government has made its specific coverage determination for purposes of this action.").

is appropriate).  Here, the United States Attorney filed and served § 233(l)(1) notices on April 10, 2024.  Yet, CCHN ignored those notices and, instead, continued to actively litigate in state court by seeking extensions for mediation and subsequently (when those mediation efforts did not pan out as hoped) filing a motion to dismiss in the New Jersey Superior Court, thus engendering Plaintiffs' extensive work in filing their opposition to the motion to dismiss.

CCHN's contention that it only recently discovered that § 223 purportedly extends to data breach cases is without merit, particularly given that the cases upon which it now relies were decided well before December of 2024.  CCHN's failure to conduct adequate research upon receipt of the § 233(l)(1) notices does not excuse – much less stay – CCHN's responsibility to timely remove under § 233.

**D.**    ***Data Breach Claims Are Not Afforded Protection Under § 233***.  CCHN erroneously asserts that data breach claims and lawsuits fall under the protections of § 233, thereby entitling CCHN to remove the case to federal court.  Not so.

The FTCA's remedy is not available to all legal actions against federally funded health centers.  Rather, the coverage was aimed at obviating the need to purchase expensive medical malpractice insurance.  In fact, the FTCA's Health Center Polic Manual instructs health centers facing potential exposure from the theft of patient information from a "cyberattack" are directed to obtain private insurance.  *See* Federal Tort Claims Act Health Center Polic Manual (July 21, 2014 ed.).

Most fundamentally, 42 U.S.C. § 233(a) limits the FTCA's remedy against the United States to actions "for damage for personal injury, include death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation" by Public Health Service employees and deemed employees.  42 U.S.C. § 233(a);

42 U.S.C. § 233(g)(1)(A).  The federal assumption of liability covers cases in which these medical-related functions are the "subject matter" of the claim.  *See Id.* § 233(a); *Hui v. Castaneda*, 559 U.S.799, 806 (2010).  "Federally funded community health centers and their employees, officers, and individual contractors are eligible for medical malpractice coverage under the Federal Tort Claims Act to the same extent as federal employees of the PHS."  *Centreville Clinics*, 2024 WL 3666164, at *1, n. 4; *see also Mendez v. Bolton*, 739 F.2d 15, 19-20 (1st Cir. 1984) (finding that employee discrimination was not covered by Section 233(a)); *see also e.g.*, *Reilly v. Ceridian Corp.*, 664 F.3d 38, 45 (3d Cir. 2011) (noting that "[t]he hacker [in the data breach] did not change or injure Appellants' bodies," and there was "no fear that litigants will be dead or disabled from the onset of the injury")..

In this consolidated class action, the data breach claims relate to the work of information-technology specialists; computer, website and network administrators; and regulatory-compliance officers.  But the claims do not at all relate to the work of professionals trained in providing medical care.  CCHN admits this in its Notice of Removal.  *See* Notice ¶ 3 (Plaintiffs' consolidated action "arises out of a recent data breach of CCHN's electronic health record system which stored certain personally identifiable information (PII) and/or protected health information (PHI)" which CCHN failed "to implement and maintain reasonable security procedures and practices to protected Plaintiffs and the putative class members' PII/PHI from unauthorized access.").

Courts routinely find that data security breaches are not within the purview of § 233.  *See Ford v. Sandhills Med. Found., Inc.*, 97 F.4[th] 252, 260-61 (4th Cir. 2024) (because the "claims arose when unknown bad actors hacked [health care facilities] third party vendor's computer system … [the] PII was not released as a result of the provision of health care."); *Hale v. Arcare, Inc.*, 2024 WL 1016361, at *3 (E.D. Ark. Mar. 8, 2024) ("failure to use reasonable security

procedures and practice appropriate to sensitive, unencrypted information as alleged in the complaint, is not a related function sufficient to confer immunity under section 233(a)."); *McKenzie v. Robeson Health Care Corp.*, 2024 WL 3039656, at *2 (E.D.N.C. June 17, 2024) (in a data breach litigation, "[w]here the instant plaintiff's injury did not occur because of the provision of healthcare … the United States may not be substituted for defendant."); *Marshall v. Lamoille Health Partners, Inc.*, 2023 WL 2931923, at *5 (D. Vt. Apr. 13, 2023) (holding that "[n]one of these technology-related activities were 'interwoven' into the provision of medical care.").

Here, CCHN does not (because it cannot) assert that any medical professional mishandled individual health information leading to personal injury. Instead, CCHN improperly seeks to extend § 233 to the collection and protection of patient data and information. Importantly, the United States Attorney already evaluated this case and determined that § 233 does not extend to data protection and that the United States will not intervene or remove this case to Federal Court.

The history of § 233 and FSHCAA further shows that § 233 plainly does not extend to data breach claims. When Section 233(a) was enacted, PHS was authorized to make provisions for "medical, surgical, and dental treatment and hospitalization and optometric case…" (42 U.S.C. § 251(b)), and "hospital and medical and dental care, including outpatient services, services of mobile clinics and public health nurses, and preventative care including immunizations and health examinations of special groups, such as children" (21 Fed. Reg. 9805, 9833, 9834 (Dec. 12, 1956). In making the statute applicable to "related functions," Congress encompassed medical responsibilities of a similar type of those listed. Put simply, Congress intended to limit the scope of § 233 coverage to medical malpractice "arising from medical, surgical, dental, or related functions."

In 1995, the FSHCAA was amended via § 233(a) to extend to health centers because

Congress interpreted this provision as relating to medical malpractice conduct. *See* Pub. L. No. 104-73, 109 Stat. 777 (1995) ("An Act to amend the Public Health Service Act to extend and clarify malpractice coverage for health centers, and for other purposes."); H.R. Rep. 102-823, at 6 (1992) ("Under the Committee bill, public or private nonprofit entities receiving Federal funds … would receive coverage under the FTCA against medical malpractice claims."); *see also* 42 U.S.C. §§ 233(g)(1)(G)(ii), (g)(2), (h)(1), (m)(2), (n)(1)(A), (n)(1)(D)(i)-(ii), (n)(1)(D)(2)(A)(i), (n)(2)(C), (n)(2)(C)(ii), (n)(2)(D) (in each instance, referencing "malpractice").

In sum, § 233 is laser-focused on medical malpractice and protecting certain health centers from the high expenses of insuring against such exposure. It offers no protection to health centers for data breach claims.

## I.    E.    CCHN Has No Basis to Remove Under § 1442

**1.    *CCHN's § 1442 Removal Is Untimely*.** CCHN's delay in removing under § 1442 precludes such removal. 28 U.S.C. § 1446(b)(1) ("[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading").

Here, Plaintiff Fazenbaker's complaint was served upon CCHN on February 7, 2024. And CCHN was certainly aware of these complaints by no later than February 24, 2024, when CCHN notified HHS of those complaints. Yet, CCHN waited for another 10 months (until December 16, 2024) to remove to federal court. Moreover, the United States Attorney for New Jersey's April 10, 2024 § 233(l)(1) notice further underscores that CCHN was aware of the complaints.

CCHN tries to excuse its delay by claiming that it only recently discovered the March 2024 outlier decision in *Krandle v. Refuah Health Ctr., Inc.*, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024), which applied § 233(a) to a data-breach class action. CCHN lack of timely discovery is baseless. Indeed, the *Krandle* decision is discussed in the Fourth Circuit's *Ford* decision cited in

the Attorney General's April 10 notices.  CCHN cites no authority for the proposition that its belated discovery of a nine-month-old decision can justify its extreme tardiness and prejudicial delay in filing its (meritless) removal.

2.      ***CCHN Is Not an Officer of the United States and Is Not Acting Under an Officer of the United States***.  "Application of § 1442, instead of § 233, in case where a defendant is deemed PHS employee would swallow the § 233 removal provision, rendering it superfluous."  *K.C. v. Cal. Hosp. Med. Ctr.*, 2018 WL 5906057, at *6 (C.D. Cal. Nov. 8, 2018); *V.G. by & through Osorio v. Cha Hollywood Med. Ctr.*, 2024 WL 289320, at *3 (C.D. Cal. Jan. 23, 2023) ("The FSHCAA provides specific removal provision which, when applicable, supersede the general federal officer removal statute."); *see also Nye v. Hilo Med. Ctr.*, 2010 WL 931926, at *3 (D. Haw. Mar. 11, 2010) ("Given that § 233 specifically applied to this action, removal under the more general § 1442 was improper.").

CCHN also attempts to use § 233 to support its § 1442 removal (Notice ¶ 7).  Permitting CCHN to do so would circumvent the framework of § 233.  *See Doe v. Centerville Clinics Inc.*, 2023 WL 5984337, at *3 (W.D. Pa. Sept. 14, 2023) (finding that "permit[ting] [defendant] to raise § 233 as a defense for purposes of § 1442, when it didn't abide by the removal procedures of § 233, would sidestep the framework of § 233"), *aff'd*, 2024 WL 3666164 (3d Cir. Aug. 6, 2023)

Even if CCHN's arguments did not conflict, CCHN cannot meet the four basic requirements of removal under § 1446(a)(1).  Namely, for removal under § 1446(a)(1), the (i) defendant must be a "person" within the meaning of the statute, (ii) plaintiff's claims must be based upon the defendant "acting under" the United States, its agencies, or its officers, (iii) Plaintiff's claims against the defendant must be "for or relating to" an act under color of federal office, and (iv) defendant must raise a colorable federal defense to the plaintiff's claims.  *Maglioli*

14

*v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021).

Most fundamentally, the mere receipt of federal funding and compliance with federal regulations does not indicate that CCHN "act[s] under" the United States. *Id.; see also Sherman v. Dignity Health*, 2019 WL 2242071, at *2 (C.D. Cal. May 23, 2019); *L.D.Q. v. Cal. Hosp. Med. Ctr.*, 2018 WL 6040474, at *2 (C.D. Cal. Nov. 16, 2018) ("[T]here is no statutory basis for Defendants' contention that they are federal officers. Defendants are not employees of a federal agency, and their sole relationship to the federal government is that of a grant recipient."); *Sherman v. Dignity Health*, 2019 WL 2242071, at *2 (C.D. Cal. May 23, 2019) ("A [defendant's] status as an employee of a federal grant recipient is insufficient to establish federal officer or agency jurisdiction").

"Even a firm subject to detailed regulations and whose activities are highly supervised and monitored is not "acting under" a federal officer … [a firm] must show that their actions involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Ford, 16 F.4th* at 404-405. Here, the Data Breach was not the result of an order or directive of any federal officer. *See id*. at 405-06 (rejecting the "regulation-plus" position of a nursing home); see also *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). CCHN has wide discretion on how to operate, it is the health center that determines what data to collect, how to secure it, and how to protect against data breaches, not the federal government. In other words, the government assists or helps carry out the work of health centers, not the other way around. Here, CCHN "cannot claim the government is relying on [it] to step into the government's shoes to perform a task the government normally reserves for itself." *N.G. v. Downey Reg'l Med. Ctr.*, 140 F. Supp. 3d 1036, 1040 (C.D. Cal. 2015).

Nor can CCHN raise a colorable federal defense. A health clinic such as CCHN does not

"raise a colorable federal defense" under § 233 to data breach claims. *Centerville Clinics Inc.*, 2024 WL 3666164, at *3 ("[clinic] could not properly remove this action under § 233. And § 233 immunity was the sole basis [clinic] provided to satisfy § 1442(a)(1)'s federal-defense requirement."). As detailed above, § 233 protects against medical malpractice, not data breaches. *See e.g., Ford*, 97 F.4th at 260-61.

Finally, CCHN's argument is at odds with the purpose of § 233. If Congress intended § 1442 to provide health clinics with the right to remove anytime they are sued, then Congress would not have needed to enact § 233(*l*)(2).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that the Court should remand this lawsuit back to the New Jersey Superior Court.

Dated: January 15, 2025

Respectfully submitted,

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**

By: */s/ Gary S. Graifman*
Gary S. Graifman
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
Tel: (201) 391-7000
Email: ggraifman@kgglaw.com

Gary E. Mason*
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: gmason@masonllp.com

Israel David*
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Email: israel.david@davidllc.com

Tel: (212) 739-0622
Fax: (212) 739-0628

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
Email: gklinger@milberg.com

*Interim Co-Lead Class Counsel*

Daniel Srourian*
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd. Suite 1710
Los Angeles, California 90010
Tel: (213) 474-3800
Fax: (213) 471-4160
Email: daniel@slfla.com

Amber L. Schubert*
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
Email: aschubert@sjk.law

Jennifer S. Czeisler*
**STERLINGTON PLLC**
One World Trade Center, 85th Floor
New York, New York 10007
Tel: (212) 433-2993
Email: jen.czeisler@sterlingtonlaw.com

Ken Grunfeld
**KOPELOWITZ OSTROW P.A.**
75 Overhill Road
Bala Cynwyd, PA
Tel.: (215)-888-3214
Email: grunfeld@kolawyers.com

*Executive Committee Members*

*Counsel for Plaintiffs*